UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEPHEN EVANS,

                  Plaintiff,

      – against –

NEW YORK CITY DEPARTMENT OF
EDUCATION,

                  Defendant.

**OPINION & ORDER**

22-cv-7901 (ER)

RAMOS, D.J.:

      Stephen Evans, proceeding *pro se*, brought this action against the New York City Department of Education ("the DOE"), alleging violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* ("ADA"). Specifically, Evans alleges that the NYC DOE's COVID policy discriminated against him on the basis of his disability and that the DOE retaliated against him for protesting the COVID policy and filing a claim with the Equal Employment Opportunity Commission ("EEOC"). Doc. 17 (Am. Compl.).

      Before the Court is the DOE's motion to dismiss the amended complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 27. For the reason discussed below, the motion is GRANTED.

**I.    BACKGROUND**

    **A.  Factual Background**

      Stephen Evans was formerly employed by the DOE as a high school math teacher at the High School for Health Professions and Human Services ("HPHS") from 2007 to 2022. Doc. 17[1] ¶¶ 86, 107.

---

[1] Doc. 17 consists of the amended complaint, Evans' affidavit, and several exhibits. Unless otherwise stated, all citations to paragraphs in Doc. 17 refer to paragraphs of the amended complaint.

In June 2021, Mayor de Blasio announced that all New York City employees, including DOE employees, must be vaccinated against COVID-19 or wear masks and perform weekly self-examinations ("Vaccine Mandate"). *Id.* ¶¶ 87–88; *id.* at 27 (Aug. 12, 2021 Email).

On July 26, 2021, Meisha Porter, the Chancellor of the DOE, circulated an email outlining the newly announced Vaccine Mandate requiring all DOE employees to provide proof of COVID-19 vaccination or submit negative weekly COVID-19 tests starting September 13, 2021. *Id.* ¶ 89; *id.* at 47 (July 26, 2021 Email). Porter also instructed that "[u]nvaccinated employees must wear a mask indoors at their worksite." *Id.* at 47. The DOE Division of Human Resources emailed all City employees on August 12, 2021 to reiterate the vaccine requirement and emphasize the expectation to update their individual medical records in the DOE's Vaccination Portal ("Vaccination Portal"). *Id.* ¶ 90; *id.* at 48 (Aug. 12, 2021 Email).

On August 23, 2021 Michael Mulgrew, President of the United Federation of Teachers ("UFT") circulated an email to union members regarding the mayor's COVID-19 Vaccine Mandate for all DOE employees. *Id.* ¶ 92; *id.* at 49 (Aug. 23, 2021 Email). A few days later, on August 26, 2021, Mulgrew sent another email following the release of the City's full health and safety plan, and explained the UFT's negotiation with the City before the proposed changes to the workplace are implemented. *Id.* ¶ 93; *id.* at 51–53 (Aug. 26, 2021 Email). Mulgrew explained that the UFT was negotiating with the DOE regarding exemptions, appeals processes for denied exemptions, and alternative outcomes for members who decline vaccination. *Id.* at 52–53. On September 1, 2021, prior to the beginning of the school year, the Division of Human Resources sent DOE staff an email that employees are required to receive at least one dose of a COVID-19 vaccine by September 27, 2021. *Id.* ¶ 94; *id.* at 54 (Sept. 1, 2021 Email). Additionally, the email stated that DOE staff would be required to wear face coverings at all times except while eating or drinking. *Id.*

On September 8, 2021, Evans sent Kelly McGuire, an employee with the DOE, written notice via letter alleging discrimination based on disability.  *Id.* ¶ 95; *id.* at 56–58 (Evans' Notice to Kelly McGuire).  In this notice, Evans claimed "to refuse experimental medical treatments; to refuse non-job-related medical inquiries, tests and treatments; to exclude himself from the policy because it violated the ADA; to refuse a policy that lacked legal authority or legal duty; and to work in an environment free of discrimination or retaliation."  *Id.* ¶ 95.

On September 10, 2021, Mulgrew, circulated an email informing Evans and union members about the outcome of the negotiation efforts.  *Id.* at 62–65 (Sept. 10, 2021 Email).  Mulgrew explained that the City agreed that all UFT members were required to comply with the City's Vaccine Mandate and be vaccinated against COVID-19 unless an employee applied for, and was granted, a medical or religious exemption ("COVID policy").  *Id.* ¶¶ 97–98; *id.* at 62–64.  Additionally, the COVID policy provided that "UFT members who decline to be vaccinated may go on unpaid leave or take severance, both with a year's health coverage."  *Id.* at 62.

That same day, Robert Gentile, the principal of HPHS, announced a "daily health screening" which employees "need to show [ ] confirmation" of completing before work.  *Id.* ¶ 99; *Id.* at 68 (Sept. 10, 2021 Email from Gentile).  On September 13, 2021, Sebastian Natera, the UFT Chapter Leader at HPHS, emailed the union employees to ensure they received both of  Mulgrew's September 10 and September 12, 2021 emails.  *Id.* ¶ 100; *id.* at 70–71 (Sept. 13, 2021 Email).  He also presented his opinion of the COVID policy stating "I'm pretty happy to know that those who ascribe to the pathological view that spreading disease is a civil right literally worth dying for can now be kept from being a danger to the school community."  *Id.* ¶ 100.  Additionally, on September 13, 2021, Evans spoke with Principal Gentile over the phone regarding the discrimination and harassment he was experiencing based on the COVID policy.  *Id.*

¶ 101. Principal Gentile advised Evans to file a complaint and to come to work wearing a mask and to self-screen for COVID-19. *Id.* ¶ 101.

On September 16, 2021, Evans filed a discrimination complaint with the EEOC. *Id.* ¶ 102; *id.* at 79–86 (EEOC Compl.). On the complaint form, Evans asserted discrimination on the basis of disability and a claim of retaliation. *Id.* at 82, 86 In his attached letter, Evans claimed that the DOE's COVID policy designated him "as impaired and in need of treatment without any assessment." *Id.* ¶ 102. Evans alleged that he had a right to refuse treatment for a disability that the DOE perceives him to have, and that he was under threat of adverse employment action as a result of his objections. *Id*. The following day, on September 17, 2021, Evans was interrupted while teaching and escorted out of his classroom and the building by an NYPD safety officer because he refused to wear a mask while in the building. *Id.* ¶ 103. Evans attempted to return to work the next day, but was prevented from entering by an NYPD safety officer and the assistant principal because he again refused to use a mask. *Id.* ¶ 104. On October 2, 2021, the DOE placed Evans on unpaid leave. *Id.* ¶ 105. The DOE followed up with Evans on November 29, 2021 via email, and informed him that if he continued to remain non-compliant, failed to extend his leave without pay, or did not return from leave by November 30, 2021, he would be subject to termination starting December 1, 2021. *Id.* ¶ 106; *id.* at 75–76 (Final Notice Email). The email provided instructions for Evans on how to extend his leave without pay status or return to work. *Id.* at 75. In exchange for extending his leave without pay status, Evans would remain eligible for health insurance through September 5, 2022 and could return to work upon completing return to work status prior to September 6, 2022. *Id.* However, if he failed to return by September 6, 2022, he would be deemed to have voluntarily resigned. *Id.* Evans would also have to waive his rights "to challenge such resignation, including, but not limited to, through a contractual or statutory disciplinary process." *Id.*

Evans did not avail himself to any of these options, and, on January 31, 2022, the DOE Division of Human Resources informed him that he was terminated, effective February 11, 2022, for failure to comply with the COVID policy. *Id.* at 77 (Termination Notice Email).

Eventually, on February 10, 2023, the Vaccine Mandate for City workers was lifted. *See Abadi v. City of New York*, 22-1560-CV, 2023 WL 3295949, at *1 (2d Cir. May 8, 2023).

### B. Procedural History

Prior to this action, Evans filed charges of retaliation and employment discrimination on the basis of disability with the EEOC on September 16, 2021. Doc. 17 ¶¶ 3, 102. Evans received a Notification of Right to Sue from the EEOC on June 7, 2022. *Id.* ¶ 3; *id.* at 79. On September 1, 2022, a notice of claim was served on the DOE's General Counsel. *Id.* ¶¶ 3, 110.

Evans filed this action on September 13, 2022.[2] Doc. 1. The DOE requested a pre-motion conference on March 6, 2023. Doc. 14. In response, Evans requested leave to amend the complaint. Doc. 16. The Court permitted Evans to file an amended complaint (Doc. 16), which he filed on March 30, 2023 (Doc. 17). In the amended complaint, Evans alleges that the DOE lacked any legal authority to implement the COVID policy. Doc. 17 ¶¶ 18–31. Evans also brings claims alleging disability discrimination and retaliation in violation of the ADA. *Id.* ¶¶ 117–20, 205–08. The Court granted the DOE leave to file a motion to dismiss and set a briefing schedule. May 9, 2023 Min. Entry. The DOE filed their motion to dismiss on June 15, 2023. Doc. 27.

## II.   LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

---

[2] Evans mailed the complaint on September 6, 2023. The Pro Se Office received it on September 13, 2023 and docketed the complaint two days later, on September 15, 2023.

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). However, this "flexible plausibility standard" is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (internal quotation marks and citation omitted), and "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). Indeed, "the purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks and citation omitted). Thus, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). In considering a Rule 12(b)(6) motion, a district court may also consider "documents attached to the complaint as exhibits[] and documents incorporated by reference in the complaint." *Doe v. N.Y. Univ.*, No. 20 Civ. 1343 (GHW), 2021 WL 1226384, at *10 (S.D.N.Y. Mar. 31, 2021) (quoting *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010)).

The same standard applies to motions to dismiss *pro se* complaints. *See Zapolski v. Federal Republic of Germany*, 425 F. App'x 5, 5–6 (2d Cir. 2011). While the Court is

6

duty-bound to construe a *pro se* complaint liberally, *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011), "even *pro se* plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level,'" *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555). A *pro se* plaintiff's pleadings must still contain "more than an unadorned, the defendant-unlawfully-harmed me accusation." *Iqbal*, 556 U.S. at 678. A complaint that "tenders 'naked assertion[s]' devoid of further enhancement" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 557); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) ("[P]*ro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983))). Additionally, "[a] district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013).

## III. DISCUSSION

### A. Evans' Challenge of the COVID Policy is Moot

Evans alleges that the COVID policy was implemented without proper regard for the ADA and is thus an unauthorized policy. Doc. 17 ¶ 30; Doc. 32 (Pl.'s Opp.) at 7. The DOE, however, argues that Evans' claims should be dismissed as moot because the vaccine requirement has been lifted. Doc. 29 (Def.'s Mem.) at 13–14.

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)). "A live controversy remains as long as 'a court can fashion some form of meaningful relief' to award the complaining party, and even '[t]he availability of [a] possible remedy is sufficient to prevent [a] case from being moot.'" *Exxon Mobil Corp. v. Healey*, 28 F.4th

383, 392 (2d Cir. 2022) (quoting *Church of Scientology v. United States*, 506 U.S. 9, 12–13 (1992)).

Exceptions to the mootness doctrine include a defendant's "voluntary cessation" of the conduct at issue, and when conduct is "capable of repetition, yet evading review." *See Marciano v. Adams*, No. 22-570-cv, 2023 U.S. App. LEXIS 11915, at *3–4 (2d Cir. May 16, 2023). "[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). Instead, voluntary cessation of allegedly illegal activities renders a case moot only "if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016) (citation omitted). The "reasonable expectation of repetition must be more than a mere physical or theoretical possibility." *Remauro v. Adams*, No. 21-cv-4553 (ARR), 2022 WL 1525482, at *4 (E.D.N.Y. May 13, 2022) (quoting *Lilibask ex rel. Mauclaire v. State of Conn. Dept. of Educ.*, 397 F.3d 77, 86 (2d Cir. 2005)).

Here, the Vaccine Mandate for City workers was lifted on February 10, 2023. *See Abadi*, 2023 WL 3295949, at *1. Additionally, there is no evidence to suggest the City is likely to reinstitute the Vaccine Mandate and that Evans is "under a constant threat" that these restrictions will be reinstated. *See id.*; *see Dark Storm Indus. LLC v. Hochul*, No. 20-cv-2725, 2021 WL 4538640, at *1 (2d Cir. Oct. 5, 2021) (holding challenges to COVID-19 related executive orders were moot because the restrictions were lifted and New York State demonstrated that the possibility of recurrence was speculative). In his response to the motion to dismiss, Evans argues that the potential for an agency to implement a Vaccine Mandate "next time" prevents his claims from being moot. Doc. 32 at 1. However, the risk of future Vaccine Mandates is also merely speculative. *See Conn. Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 446 (2d Cir. 2021) (concluding that

8

"[p]articularly in view of the mitigation measures that have become available to combat the spread of COVID-19, and the providential infrequency of pandemics," the risk of a future COVID-19 restriction on firearm retailers was "speculative"). Accordingly, Evan's claim challenging the validity of the DOE's COVID policy is dismissed for mootness.

### B. Evans' ADA Claim is Barred by the Statute of Limitations

The DOE argues that Evan's ADA claims should be barred as untimely because Evans failed to file this action within the requisite ninety days after receiving his right-to-sue letter from the EEOC. Doc. 29 at 15.

Under the ADA, a plaintiff must file a complaint within ninety days of the plaintiff's receipt of a right-to-sue letter from the EEOC. *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011). Absent substantiated challenges, courts generally presume that a right-to-sue letter from the EEOC is received three days after it is mailed. *See, e.g., Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n.1 (1984) (per curiam); *Webster v. Potter*, 746 F.Supp.2d 635, 639–40 (S.D.N.Y. 2010). "[I]n the absence of a recognized equitable consideration, the court cannot extend the [ninety day] limitations period by even one day," even where the plaintiff is proceeding *pro se*. *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984) (citation omitted); *see also, e.g.*, *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 78 (2d Cir. 2003) (affirming dismissal of complaint received by *pro se* office ninety-two days after receipt of right-to-sue letter); *Legrá v. Bd. of Educ. of the City Sch. Dist. of the City of New York*, No. 14-cv-9245, 2016 WL 6102369, at *2 (S.D.N.Y. Oct. 19, 2016) (dismissing *pro se* plaintiff's ADA claims filed 95 days after plaintiff received right-to-sue letter); *Moore v. City of New York*, No. 15-cv-4578, 2016 WL 3963120, at *7 (S.D.N.Y. July 21, 2016) (dismissing *pro se* plaintiff's ADA claims that were filed 95 days after plaintiff received right-to-sue letter); *Sanchez v. National Cleaning Co.*, 11 F. Supp. 2d 453, 455 (S.D.N.Y. 1998) (dismissing *pro se* plaintiff's complaint as untimely where filed 92 days after receipt of right-to-sue letter).

Here, Evans alleges that he received his right-to sue letter the same day it was issued (June 7, 2022), and it contains a clear notice that he must bring a suit within ninety days of receipt of the letter. Doc. 17 ¶ 3; *id.* at 79. The parties dispute when Evan's filed the complaint with the Court. Where a *pro se* plaintiff submits his complaint to the Pro Se Office, and the complaint is not filed until a later date, the date the Pro Se Office received the complaint "is the relevant date for purposes of determining whether [her] claims are time-barred," not the date that the complaint was docketed. *Chira v. Columbia Univ.*, 289 F. Supp.2d 477, 484 (S.D.N.Y. 2003); *see also Zerilli-Edelglass*, 333 F.3d at 78 (collecting cases and rejecting the argument that the relevant date is when the pro se plaintiff mailed the complaint). Therefore, the relevant date that Evans filed his complaint is September 13, 2022. *See* Doc. 1. However, September 13, 2022 is ninety-eight days *after* June 7, 2022, meaning Evans has failed to file within the requisite time period. *See Johnson*, 731 F.2d at 146; *Tiberio*, 664 F.3d at 37. Even, however, if Evans was correct that the relevant date was September 6, 2022, that is still ninety-one days after June 7, 2022 and therefore untimely. Therefore, Evans' ADA claims are time barred. *Id.*

That conclusion is sufficient to grant DOE's motion to dismiss the complaint. The Court nevertheless briefly addresses the remaining arguments below, which similarly support dismissal of the action.

### C. Evans Fails to State an ADA Claim against the DOE

#### 1. *Evans Fails to Plausibly Allege a Claim for ADA Discrimination Because He Does Not Show He is Disabled*

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . discharge of employee . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

Employment discrimination claims under the ADA are analyzed under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Kovaco v. Rockbestos*, 834 F.3d 128, 136 (2d Cir.

10

2016). Under that framework, the plaintiff must first establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for its actions. *Id.* at 802–03. If the defendant satisfies its burden, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual. *Id.* at 804. Ultimately, the plaintiff will be required to prove that the defendant acted with discriminatory motivation. *See Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015). At the pleading stage, however, the facts alleged must merely "give plausible support to the reduced requirements that arise under *McDonnell Douglas* in the initial phase" of the case. *Id.* at 311. Thus, the question on a motion to dismiss is whether the plaintiff has adequately pleaded a prima facie case. *Davis v. Goodwill Indus. of Greater New York and New Jersey, Inc.*, 15-cv-7710 (ER), 2017 WL 1194686, at *5 (S.D.N.Y. Mar. 30, 2017).

In order to establish a prima facie case of discrimination under the ADA, the plaintiff must demonstrate that (1) his employer is subject to the ADA; (2) he is disabled within the meaning of the ADA; (3) he was qualified to perform the essential functions of the job with or without reasonable accommodation; (4) he suffered an adverse employment action; and (5) the adverse action occurred under circumstances giving rise to an inference of discriminatory intent. *See Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 234–35 (2d Cir. 2015).

One has a disability within the meaning of the ADA if he "has a physical or mental impairment that substantially limits one or more major life activities," has "a record of such an impairment," or is "regarded as having such an impairment" by his employer. 42 U.S.C. § 12102(1). For the reasons set forth below, Evans has failed to allege sufficient facts to establish that he is a "disabled person" for purposes of bringing an ADA discrimination claim.

11

> a. *Evans Has Failed to Plausibly Allege that He Was "Regarded as" Disabled by the DOE*

Evans claims that, "through its [COVID] policy, [the DOE] regards and treats [him] as if he has an on-going and indefinite condition of impairment that warrants the mitigation measures outlined in its policy." Doc. 17 ¶ 128. The DOE argues that Evans was not "regarded as" disabled because he was required to comply with a COVID policy, which was applicable to all DOE employees. Doc. 29 at 17.

A plaintiff is "regarded as" having an impairment when the plaintiff "establishes that he or she has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." § 12102(3); *see also Hilton v. Wright*, 673 F.3d 120, 129 (2d Cir. 2012). "[T]he decisive issue is the employer's perception of his or her employee's alleged impairment." *Giordano v. City of New York*, 274 F.3d 740, 748 (2d Cir. 2001).

Here, Evan's alleges that he was "regarded" as having a disability because the COVID policy "perceives all employees as impaired and in need of treatment with the policy-prescribed mitigation measures." Doc. 17 ¶ 32. Evans further claims the policy indicates the DOE perceived him "as if he has an on-going and indefinite condition of impairment that warrants" testing, vaccination, and mask-wearing. *Id.* ¶¶ 128–29.

However, the Vaccine Mandate alone does not suggest that the plaintiff was regarded as disabled to plausibly state an ADA discrimination claim. Courts have consistently found that an employer's perception that an employee had COVID, or was susceptible to developing COVID, is not cognizable under the ADA *See D'Cunha v. Northwell Health Sys.*, No. 22-cv-00988 (MKV), 2023 WL 2266520, at *5 (S.D.N.Y. Feb. 28, 2023) (dismissing an ADA discrimination claim and holding that "[plaintiff] must allege facts suggested that she was regarded as presently having a disability. Even if she was perceived of being at risk of developing COVID-19 in the future, that would

not plausibly state an ADA claim."), *aff'd*, No. 23-476-cv, 2023 WL 7986441 (2d Cir. Nov. 17, 2023); *Earl v. Good Samaritan Hosp. of Suffern*, No. 20-cv-03119, 2021 WL 4462413, at *6 (S.D.N.Y. Sept. 28, 2021) ("perception of infectiousness is not the same as perceived disability and, in any event, plaintiff's claim that the Hospital considered him infectious is wholly speculative"); *Kosiba v. Catholic Health Sys. of Long Island, Inc.*, No. 21-cv-06416, 2022 U.S. Dist. LEXIS 209772, at *20 (E.D.N.Y. Nov. 18, 2022) (dismissing plaintiff's ADA discrimination claim where the "allegations do little more than take issue with the safety protocols that were being enforced during the pandemic for unvaccinated healthcare workers—protocols which were clearly applied to all employees who were not otherwise granted a medical or religious accommodation"). Accordingly, "an employer's imposition of a COVID-19 vaccination requirement does not raise a plausible inference that the employer regarded all its employees (or its unvaccinated employees) as disabled within the meaning of the ADA." *Williams-Moore v. Quick Int'l Courier, LLC*, No. 22-cv-592 (RPK), 2023 WL 6292540, at *4 (E.D.N.Y. Sept. 26, 2023) (collecting cases); *accord Newell v. State Univ. of N.Y. Westchester Cmty. Coll.*, 22-cv-08524 (PMH), 2023 WL 4082030, at *4 (S.D.N.Y. June 20, 2023).

    b. *Evans Has Also Failed to Plausibly Allege that He Suffered Discrimination Based on a "Record of" His Disability*

EEOC regulations provide that a plaintiff has a record of disability if the plaintiff has "a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k)(1). Allegations that "merely track the language of the statute" or "[v]ague, conclusory assertions without details on how [a plaintiff's] condition actually affects a major life activity are insufficient" to survive a motion to dismiss. *Cain v. Mandl Coll. of Allied Health*, No. 14-cv-1729 (ER), 2017 WL 2709743, at *4 (S.D.N.Y. June 22, 2017); *see also Hallgren v. Bell Atl. Corp.*, No. 99-cv-11937 (CM), 2000 WL 726496, at *1 (S.D.N.Y. May 30, 2000); *see also Shine v. N.Y.C. Hous. Auth.*, No. 19-cv-04347 (RA),

2020 WL 5604048, at *7 (S.D.N.Y. Sept. 18, 2020) (collecting cases and noting that "courts in this Circuit have established that plaintiffs must plead more than vague or conclusory allegations regarding 'difficulty' or 'trouble' conducting a major life activity").

Evans alleges that the DOE made a record of disability by classifying him as an "untreated" or unvaccinated employee and requiring mitigation measures like mask-wearing, testing, temperature taking, and health surveys.  Doc. 17 ¶ 138.  He further alleges the COVID policy impedes his ability to work and the treatment requirements create a physical impairment that substantially limits his ability to engage in major life activities, such as working, breathing, communicating and caring for oneself.  *Id.* ¶ 135.

An employer keeping track of unvaccinated employees and requiring mitigation measures does not meet the "record of" prong under the ADA.  *See, e.g., Sharikov v. Philips Med. Sys. MR, Inc.*, No. 22-cv-0326 (BKS), 2023 WL 2390360, at *9 (N.D.N.Y. Mar. 7, 2023) (dismissing "record of" ADA claim when "[t]here are no facts alleged indicating that being unvaccinated is a disability").  This is not a misclassification, and the COVID policy does not suggest that the DOE ever believed Evans was unable to perform any major life activities because he was unvaccinated.  *See id.* at *9 ("Plaintiff has failed to plausibly allege that making a record of his vaccination status, in accordance with the policy, constituted making a record of an impairment that substantially limits one or more major life activities.").  Moreover, Evan's claims are significantly undermined by his apparent willingness to return to work.  Doc. 17 ¶ 163 (Evans has stated that "he is both willing and able to continue performing his employment duties and that [the DOE's] COVID policy is not related in any way to his essential job functions").  Therefore, the Court finds that Evans fails to plausibly allege that the DOE made a record of disability.

2. *Evans Fails to Plausibly Allege a Claim for ADA Retaliation Because He Fails to Show a Causal Connection Between Termination and Protected Activity*

Under the ADA, an employer cannot "coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of . . . any right granted or protected by this Act." 42 U.S.C. § 12203(b). The *McDonnell Douglas* burden-shifting framework used to analyze claims of discrimination also applies to claims of retaliation under the ADA. *Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003); *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999). To state a claim for retaliation under the ADA, a plaintiff must establish that: (1) he "was engaged in protected activity;" (2) "the alleged retaliator knew that plaintiff was involved in protected activity;" (3) "an adverse decision or course of action was taken against plaintiff;" and (4) "a causal connection exists between the protected activity and the adverse action." *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir. 2002) (citation omitted). "To survive a motion to dismiss, an employee need not specifically plead every element; []he must allege just enough factual matter to render the retaliation claims plausible." *Pediford-Aziz v. City of New York*, 170 F. Supp. 3d 480, 485 (E.D.N.Y. 2016) (internal quotation marks and citations omitted).

The DOE argues that Evans' retaliation claim is baseless because the alleged retaliatory act, termination, was due to Evans' refusal to adhere to safety measures which applied to all DOE employees and not in retaliation of protected activity. Doc. 29 at 23. A plaintiff who is "demonstrably at risk" of being disciplined for legitimate reasons prior to engaging in protected activity cannot "rely solely on temporal proximity" to establish retaliation. *Catanzaro v. City of New York*, No. 10-cv-1825 (JSR), 2011 U.S. Dist. LEXIS 9623, at *21 (S.D.N.Y. Jan. 25, 2011), *aff'd*, 486 F. App'x 899 (2d Cir. 2012); *accord Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) (holding an "inference of retaliation does not arise" notwithstanding temporal proximity where "gradual adverse job actions began well before the plaintiff had ever engaged in any

protected activity"); *Amaya v. Ballyshear LLC*, 295 F. Supp. 3d 204, 222 (E.D.N.Y. 2018) (dismissing Title VII retaliation claim because plaintiff's "failure to provide any requested information to the . . . defendants regarding her ability to return to work constitutes a significant intervening event" which "forestalls the plaintiff's ability to look to temporal proximity to establish causation"); *Williams v. City University of New York*, No. 10-cv-2127 (CBA), 2011 WL 6934755, at *7 (E.D.N.Y. Dec. 30, 2011). Temporal proximity alone also fails to establish retaliation if a plaintiff's protected activity and the employer's adverse action necessarily occur close in time. *See Lee v. Saul*, No. 19-cv-6553 (PGG), 2022 WL 873511, at *12 (S.D.N.Y. Mar. 23, 2022) ("Given the numerous complaints and lawsuits [p]laintiff has filed during his employment at the SSA, there was rarely a time that [the SSA] could have taken action against [plaintiff] that would not have been recently preceded by some complaint that [he] believes is subject to . . . protection." (internal quotation marks omitted)).

Here, Evans' September 8, 2021 email to Kelly McGuire, complaining of discrimination and retaliation (Doc. 17 ¶ 95), the EEOC charge of discrimination filed on September 16, 2021 (*id.* ¶ 102), and filing this action on September 13, 2022 (Doc. 1) are protected activities. *See Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002) ("[A]ttempts to assert [] rights against discrimination are protected activities."). However, opposing the mitigation measures outlined by the COVID policy by failing to comply with testing and wearing a mask (Doc. 17 ¶ 222) does not constitute protected activity.

Evans' initial opposition to the COVID policy on September 8 and the September 16, 2021 EEOC charge occurred after the DOE issued the COVID policy on July 26, 2021. Doc. 17 ¶ 89. The COVID Policy required all employees to comply by September 27, 2021 and as Evans understood, if he did not comply, he would face termination. *Id.* ¶ 94. The policy set a deadline for compliance or discipline meaning that Evans' opposition to the COVID policy would naturally be close in time. *See Lee*, 2022 WL

16

873511, at *12. Evans identifies no additional facts directly demonstrating retaliatory animus, nor any evidence of disparate treatment. The COVID policy applied to all employees and Evans' own pleadings show he was disciplined as a consequence of the refusal to comply with the policy, rather than as retaliation for opposition to it. *See Amaya*, 295 F. Supp. 3d at 222; *Catanzaro*, 2011 WL 335648, at *7; Doc. 33 at 14 ("Plaintiff was admittedly fired for refusing to get 'vaccinated[.]'").

Therefore, Evans has failed to plausibly allege facts supporting a causal connection between the adverse employment actions and his protected activity sufficient to create a plausible claim of retaliatory intent.

## IV. CONCLUSION

For all the reasons stated herein, the DOE's motion to dismiss is GRANTED. The Clerk of Court is respectfully directed to terminate the motion (Doc. 27) and close the case.

IT IS SO ORDERED.

Dated:  November 20, 2023
        New York, New York

_____
EDGARDO RAMOS, U.S.D.J.